UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| BOBBI B.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-cv-00122-KMB-TWP |
| | ) | |
| FRANK BISIGNANO, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Bobbi B. applied for disability benefits from the Social Security Administration ("SSA") on January 12, 2023, alleging a disability onset date of March 1, 2019. [Dkt. 8-2 at 18.] Administrative Law Judge Neil Morholt (the "ALJ") issued a decision on June 5, 2024, concluding that Bobbi was not disabled and therefore not entitled to receive the requested benefits. [*Id.* at 38.] The Appeals Council denied her request for review on April 29, 2025. [*Id.* at 2.] On June 26, 2025, Bobbi timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.] For the reasons explained below, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case back to the agency for further proceedings.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[2]

Bobbi was 51 years old when her alleged disability began. [Dkt. 8-2 at 36.] She previously worked as a shipping clerk, and she worked in accounts payable and administrative sales. [Dkt. 8-6 at 15-16.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Bobbi was not disabled. Specifically, the ALJ found as follows:

- At Step One, Bobbi has not engaged in substantial gainful activity since March 1, 2019, the alleged onset date. [Dkt. 8-2 at 20.]
- At Step Two, Bobbi has the following severe impairments: degenerative changes of the cervical spine, depression, and anxiety. [*Id.*]
- At Step Three, Bobbi does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* at 23.]
- After Step Three but before Step Four, Bobbi has the RFC "to perform light work as defined in 20 CFR 404.1567(b), except: the claimant is able to stand and/or walk for up to four hours out of an eight-hour workday; the claimant is able to perform occasional stooping, crouching, kneeling, crawling, balancing and climbing of ramps and stairs but no climbing of ladders, ropes or scaffolds; the claimant is able to have frequent exposure to wetness, vibration, unprotected heights and dangerous machinery; the claimant is able to understand, remember and carry out simple and detailed but not complex tasks; the claimant is able to interact as needed with supervisors, co-workers and the general public; and the claimant is able to manage the stresses involved with detailed work related tasks." [*Id.* at 26.]
- At Step Four, Bobbi is "capable of performing past relevant work in a job that was composite of the occupation of Order Clerk and File Clerk." [*Id.* at 35.]
- Because Bobbi has the residual functioning capacity to perform past relevant work, she is not disabled, and Step Five need not be addressed. [*Id.* at 38.]

[2] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

## III. DISCUSSION

Bobbi raises two issues for the Court's review: (1) whether the ALJ erroneously found that Bobbi's fibromyalgia is not a medically determinable impairment and therefore failed to take Bobbi's fibromyalgia into account when formulating her RFC; and (2) whether the ALJ erred in his evaluation of Bobbi's subjective symptoms as required by SSR 16-3p, which also led to a flawed RFC. [Dkt. 10 at 4.] The Court will begin with Bobbi's first issue.

### A. Fibromyalgia Determination at Step Two

Bobbi contends that the ALJ "played doctor" by finding that Bobbi's fibromyalgia was not a medically determinable impairment, even though both state agency medical consultants—Dr. Corcoran and Dr. Sands—listed her fibromyalgia as a severe medically determinable impairment in their Disability Determination Explanations. [Dkt. 10 at 13 (citing dkts. 8-3 at 5; 8-3 at 17).] Additionally, Bobbi contends that the medical evidence in the record contradicts the ALJ's finding that there is a lack of evidence that satisfies the requirements of SSR 12-2p. [*Id.* at 15.] In support of this, Bobbi points to evidence of bilateral tenderness in several areas of her body above and below the waist; x-rays of her shoulders, spine, and hips that do not document other medical impairments that could explain her symptoms; a brain MRI that was essentially normal despite Bobbi's complaints of dizziness, memory loss, and occasional tremors; and reported treatment for fibromyalgia symptoms including fatigue, memory problems, waking unrefreshed, depression, and anxiety. [*Id.* at 14-15.] Bobbi contends that the ALJ's reliance on objective findings to establish fibromyalgia as a medically determinable impairment demonstrate the ALJ's "total lack of understanding" of the impairment, as fibromyalgia can also be established as a medically determinable impairment if certain signs or symptoms are present. [*Id.* at 15-16.]

Due to this alleged error at Step Two regarding Bobbi's fibromyalgia, Bobbi argues that the ALJ failed to formulate an RFC that accurately described her limitations. [*Id.* at 18.]

In response, the Commissioner argues that the ALJ reasonably determined that Bobbi's fibromyalgia was not a medically determinable impairment because the ALJ explained that Bobbi did not provide the evidence necessary to satisfy the requirements of SSR 12-2p. [Dkt. 15 at 4-5.] The Commissioner further contends that even if the ALJ erred in determining Bobbi's fibromyalgia to not be a medically determinable impairment, the ALJ still considered Bobbi's fibromyalgia in formulating the RFC and, therefore, any error is harmless. [*Id.* at 6.]

In reply, Bobbi contends that the ALJ's Step Two error was not harmless. [Dkt. 16 at 1-3.] The specifics of the Parties' arguments regarding harmless error are set forth further below in the Court's analysis of the issue.

The Court begins its analysis of the Parties' arguments by setting forth the standards for evaluating claimants who allege that they have fibromyalgia. Then, the Court will turn to whether the ALJ erred at Step Two when he concluded that Bobbi's alleged fibromyalgia was not a medically determinable impairment. After concluding that the ALJ erred, the Court will analyze whether that error was harmless.

**1. Standards for Evaluating Fibromyalgia**

"Fibromyalgia is notoriously difficult to assess because 'its symptoms are entirely subjective.'" *Swiecichowski v. Dudek*, 133 F.4th 751, 757 (7th Cir. 2025) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Typical symptoms of fibromyalgia include pain all over the body, severe fatigue, sleep problems, and "problems with memory or thinking clearly." *Id.*; *see Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1136-37 (7th Cir. 2017). The

only objective test that can be used to measure the severity of fibromyalgia is a trigger-point assessment. *Swiecichowski*, 133 F.4th at 757.

The Social Security Administration provides guidance to ALJs for evaluating fibromyalgia through Social Security Ruling SSR 12-2p, 2012 WL 3104869 (July 25, 2012); *see Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) ("Social Security Rulings lack the force and effect of law, but they are binding on ALJs."). Under SSR 12-2p, fibromyalgia can be established as a medically determinable impairment when a physician's diagnosis is supported by evidence satisfying at least one of two sets of diagnostic criteria. *Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016). Both sets of criteria—the 1990 ACR Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria—require a history of widespread pain persisting for at least three months and evidence that other potential disorders that could cause the signs and symptoms were excluded. SSR 12-2p, 2012 WL 3104869, at *2-3. The 1990 ACR criteria additionally requires a trigger-point assessment with eleven out of eighteen positive tender points, while the 2010 ACR criteria additionally requires repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions. *Id.*

**2. Whether the ALJ Erred at Step Two Regarding Bobbi's Fibromyalgia**

In performing his analysis of the record, "[a]n ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). However, an ALJ must still provide an adequate explanation, or "logical bridge," connecting the evidence to his conclusion. *Id.* at 1054. In doing so, an ALJ cannot "ignore evidence that undercuts [the ALJ's] conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2024) (citing *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014)). At Step Two, if an ALJ fails to provide a traceable

path of reasoning regarding his decision to exclude an impairment as non-medically determinable, remand is required unless the error is harmless. *See Dawson v. Berryhill*, 2017 WL 1190508, at *5 (S.D. Ind. Mar. 31, 2017) (remanding where ALJ's failure to include claimant's fibromyalgia as a medically determinable impairment at Step Two affected the rest of the evaluation).

The Court agrees with Bobbi that the ALJ erred at Step Two by failing to address evidence contrary to his conclusion and by failing to build a logical bridge between the available evidence and his conclusion that Bobbi's fibromyalgia was not a medically determinable impairment. The ALJ provided the following analysis of Bobbi's fibromyalgia at Step Two:

> The claimant has primarily alleged being disabled due to fibromyalgia with associated symptoms of widespread pain that varies in its locations from day to day, chronic fatigue and brain fog compounded by migraines. The claimant alleges having been initially diagnosed with fibromyalgia in March 2011 by her family physician without involvement of a rheumatologist following multiple blood tests and having "had just about all of them" for 18 fibromyalgia tender points. However, this is not documented in the medical evidence before the undersigned and the claimant testified that she has no records of this. . . . The primary care records do include fibromyalgia as a recorded diagnosis, for which the claimant has been treated with prescribed medications, primarily a muscle relaxant, Cyclobenzaprine/Flexeril, taken on an as needed basis. However, there is a conspicuous absence of documented objective supporting findings on examinations or documentation of an objective clinical analysis to establish fibromyalgia as a medically determinable impairment consistent with Social Security Ruling 12-2p.

[Dkt. 8-2 at 21.] Following that analysis, the ALJ stated in the next paragraph that "fibromyalgia is not a medically determinable impairment for this claimant." [*Id.*]

As an initial matter, although the ALJ acknowledged that Bobbi's primary care records show a diagnosis of fibromyalgia, the ALJ fails to mention that state agency physicians Dr. Corcoran and Dr. Sands both listed Bobbi's fibromyalgia not only as a medically determinable impairment, but a severe one. [Dkt. 8-3 at 5, 17.] Yet the ALJ did not consider their opinions regarding Bobbi's fibromyalgia at Step Two. *See Tya S. v. O'Malley*, 2024 WL 6893875, at *4 (S.D. Ind. Mar. 25, 2024) (concluding that the ALJ erred in deciding that the claimant's migraines

were not a medically determinable impairment without confronting the state agency consultant's conclusion that the migraines "qualify as a *severe* impairment" (emphasis in original)).

More importantly, the ALJ's analysis fails to confront the relevant criteria under SSR 12-2p and the record evidence supporting a finding that Bobbi's fibromyalgia meets these criteria. The ALJ appears to rest his conclusion that Bobbi's fibromyalgia is not a medically determinable impairment entirely on the fact that "there is a conspicuous absence of documented objective supporting findings on examinations or documentation of an objective clinical analysis." [Dkt. 8-2 at 21.] But a claimant can establish fibromyalgia as a medically determinable impairment under the 2010 ACR Preliminary Diagnostic criteria without undergoing the tender point physical exam or any other "objective" exam the ALJ seemed to require. *See* SSR 12-2p, 2012 WL 3104869, at *3. The ALJ did not consider this possibility in his analysis.

The ALJ's failure to do so was error given that record evidence shows that Bobbi had many of the core symptoms of fibromyalgia—including pain, fatigue, anxiety and depression, and memory problems, [*see, e.g.*, dkt. 8-7 at 2-4, 24-28, 102, 206, 249]—that the 2010 ACR Preliminary Diagnostic Criteria explicitly recognize as part of the basis to establish fibromyalgia as a medically determinable impairment. *See* SSR 12-2p, 2012 WL 3104869, at *3. Because the ALJ did not even mention the evidence that Bobbi had these common symptoms of fibromyalgia, let alone build a logical bridge between that evidence and his conclusion that her fibromyalgia was not a medically determinable impairment under SSR 12-2p, the ALJ erred at Step Two. *See Spicher*, 898 F.3d at 757 ("[A]n ALJ may not ignore evidence that undercuts [the ALJ's] conclusion."); *see also Dawson*, 2017 WL 1190508, at *5 (holding that the ALJ failed to build a logical bridge at Step Two because "the ALJ simply noted that a diagnosis of fibromyalgia was present," set forth the "criteria for evaluating fibromyalgia under SSR 12-2p," then "simply

asserted that '[u]nder these examination protocols, the medical evidence does not contain sufficient material to establish fibromyalgia as a medically determinable impairment'"); *Cole v. Colvin*, 2015 WL 1885452, at *4 (S.D. Ind. Apr. 23, 2015) (finding that the ALJ erred by failing to consider the claimant's fibromyalgia symptoms of generalized pain, fatigue, and disturbed sleep at Step Two because these are "the principal symptoms of fibromyalgia" and, given that "there are no laboratory tests for the presence or severity of fibromyalgia, . . . drawing a negative inference with regard to fibromyalgia on the basis of a lack of such tests is improper" (citation and alterations omitted)).

**3. Whether the ALJ's Step Two Error was Harmless**

The Commissioner maintains that even if the ALJ erred in his assessment of Bobbi's fibromyalgia at Step Two, the error was harmless. Specifically, the Commissioner points to the ALJ's explanation that he had considered any "'effect that the claimant's non-severe impairments [combined with her severe impairments] would have on her ability to function'" and the ALJ's statement that he had considered "all symptoms." [Dkt. 15 at 6 (quoting dkt. 8-2 at 23).] The Commissioner also points to the medical opinions of Dr. Corcoran and Dr. Sands, which he argues support the ALJ's finding that Bobbi could perform a range of light work, since the physicians determined as much despite finding Bobbi's fibromyalgia to be a severe impairment. [Dkt. 15 at 6.]

In reply, Bobbi asserts that the ALJ's statement that he considered "all symptoms" is a boilerplate statement that does not indicate whether the ALJ actually considered her fibromyalgia in formulating her RFC. [Dkt. 16 at 1.] Furthermore, Bobbi contends that the ALJ's stated consideration of non-severe impairments is not indicative of his consideration of her fibromyalgia, since he did not find her fibromyalgia to be a medically determinable impairment at all. [*Id.*]

An error does not require remand when the record allows a court to "predict with great confidence what the result on remand would be[,]" *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011), or when the error is such that the reviewing court is "convinced the ALJ would reach the same result on remand," *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). If an ALJ errs at Step Two, the error may be harmless if the ALJ nevertheless continues to Step Three and "consider[s] all of [the claimant's] severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC." *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015).

In Bobbi's case, the Court cannot "predict with great confidence," *McKinzey*, 641 F.3d at 892, that the ALJ's Step-Two error is harmless. Unlike some Step Two errors where the ALJ improperly deems a medically determinable impairment non-severe but then goes on to consider the limitations from that non-severe medically determinable impairment when formulating the RFC, here, the ALJ improperly concluded that Bobbi's fibromyalgia was not a medically determinable impairment at all. [*See* dkt. 8-2 at 21.] This led the ALJ to repeatedly brush away limitations Bobbi attributed to her fibromyalgia by simply stating that he "does not find fibromyalgia to be a medically determinable impairment." [*Id.* at 28.]

For example, when formulating Bobbi's RFC, the ALJ assessed Bobbi's alleged physical impairments. [*Id.*] After detailing the treatment history regarding her fibromyalgia and the fatigue it caused her, the ALJ concludes: "However, as addressed above, the undersigned does not find fibromyalgia to be a medically determinable impairment." [*Id.*] The ALJ did so again in the paragraph concluding his assessment of Bobbi's physical impairments. To support his ultimate decision that "the total medical and other evidence weighs against a finding of disability or additional or greater functional limitations," the ALJ specifically cited the fact that Bobbi's

"reported fibromyalgia is not supported as a medically determinable impairment." [*Id.* at 29.] Simply put, the ALJ recognized in his own RFC analysis that one of the bases for not finding that Bobbi's RFC should include additional limitations was his Step Two conclusion that her fibromyalgia was not a medically determinable impairment.

The ALJ's decision not to include limitations from non-medically determinable impairments makes sense given that, in formulating the RFC, the ALJ is to "evaluate all limitations that arise from *medically determinable impairments*." *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (emphasis added) (citation and quotation marks omitted). In fact, Social Security Rule 96-8p makes clear that "in addressing RFC, the [ALJ] must consider *only* limitations and restrictions attributable to medically determinable impairments." SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). Thus, the ALJ was right not to include limitations from non-medically determinable impairments. The problem in Bobbi's case is that for the reasons stated above, the Court has already concluded that the ALJ erred in his Step Two analysis with regard to Bobbi's fibromyalgia not being a medically determinable impairment. Thus, the Court cannot determine that the error was harmless because the ALJ continued to rely on that erroneous conclusion in other steps of his decision concluding that Bobbi was not disabled.

Given this, neither of the Commissioner's arguments in support of finding the Step-Two error harmless are convincing. First, the Commissioner argues that "the ALJ indicated that he considered all of the evidence concerning the presence of fibromyalgia symptoms . . . in making his residual functional capacity (RFC) determination," [dkt. 15 at 6], and points to the following statement from the ALJ at the conclusion of his Step-Two analysis to demonstrate this:

> Non-severe impairments can, when considered in conjunction with one another and the claimant's severe impairments, affect her residual functional capacity. In recognition of this fact, and in accordance with SSR 96-8p, any such effect that the

> claimant's non-severe impairments would have on her ability to function have been considered when formulating her residual functional capacity.

[Dkt. 8-2 at 23.] In other words, the ALJ states that he considered Bobbi's severe and non-severe impairments when formulating her RFC. But, as discussed above, the ALJ concluded that Bobbi's fibromyalgia was not a medically determinable impairment at all. Thus, a statement by the ALJ that he considered both severe and non-severe medically determinable impairments does not show that the ALJ considered Bobbi's fibromyalgia in his analysis.

Second, the Commissioner points to the fact that the ALJ's conclusion that Bobbi could perform light work was consistent with the state agency consultants' findings, even though they both considered Bobbi's fibromyalgia as a severe impairment in making their assessments. [Dkt. 15 at 6 (citing dkt. 8-3 at 7, 19).] The Seventh Circuit Court of Appeals has stated that failing to consider limitations from an impairment "could conceivably be harmless if the ALJ indirectly took [the impairment] into account by adopting limitations suggested by physicians who were aware of or discussed [that impairment]." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). If the ALJ did so, "combined with the claimant's failure to 'specify how [the impairment] further impaired his ability to work,'" the error could be harmless. *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)); *see Martinez v. Commissioner of Social Security*, 2026 WL 2664054, at *3 (N.D. Ind. Sept. 10, 2026) ("[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work, and if the ALJ indirectly took obesity into account by adopting limitations suggested by physicians who were aware of or discussed [the claimant's] obesity." (quoting *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015)); *Arnett*, 676 F.3d at 593) (quotation marks omitted)).

The Court concludes that the requirements for a showing of harmless error, however, are not met here. First, as was true in *Arnett*, "it is not clear from the record that the limitations the ALJ adopted met th[is] standard," since the ALJ "did not give full credit to the opinions" of the two the state agency consultants' opinions. *Id.* While the ALJ found Dr. Corcoran and Dr. Sands's opinions "collectively persuasive," he also made clear that he would "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinion." [Dkt. 8-2 at 33.] This is further demonstrated by the fact that the ALJ found that Bobbi has greater limitations than those suggested by Dr. Corcoran or Dr. Sands—specifically, the ALJ determined that "some environmental restrictions are also warranted." [*Id.*]

Second, unlike in *Prochaska*, Bobbi specified how her fibromyalgia "further impaired her ability to work." 454 F.3d at 737 (citation and quotation marks omitted). For example, she testified that her fibromyalgia caused extreme fatigue that could cause "episodes of being essentially bedridden for 2-3 days at a time." [Dkt. 8-2 at 27.] But the ALJ disregarded this and other testimony regarding Bobbi's fibromyalgia because he erroneously determined that it was not a medically determinable impairment. [*Id.* at 28.] Had the ALJ properly considered Bobbi's testimony regarding her fatigue, the ALJ could have found additional limitations beyond those noted by Dr. Corcoran and Dr. Sands, just as the ALJ did when he added additional environmental limitations that those doctors did not include.

In sum, while there are cases where an ALJ's error "could conceivably be harmless if the ALJ indirectly took [the impairment] into account by adopting limitations suggested by physicians who were aware of or discussed [that impairment]," *Arnett*, 676 F.3d at 593, this is not such a case. Like in *Arnett*, where the Seventh Circuit Court of Appeals found that the error

was not harmless, the ALJ here "did not give full credit," *id.*, to Dr. Corcoran and Dr. Sands's opinions. Moreover, the ALJ acknowledged Bobbi's alleged limitations due to fibromyalgia, but repeatedly stated he was not considering them because of his erroneous determination that her fibromyalgia was not a medically determinable impairment. *See Cole*, 2015 WL 1885452, at *6 (finding that the ALJ's Step-Two error of finding the claimant's fibromyalgia non-severe warranted reversal because the ALJ did not go on to assess the allege limitations caused by the claimant's fibromyalgia when determining the claimant's RFC). Had he not erroneously failed to consider these limitations, he "might well have reached a different conclusion." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

For all of these reasons, the Court cannot conclude that the ALJ's error was harmless. Thus, it must reverse the ALJ's decision and remand this case for further proceedings.

### B. Other Arguments

The Parties disagree about the outcome of the other issue raised by Bobbi in her opening brief. Having already found that it is necessary to remand Bobbi's case for the reasons stated herein, the Court declines to substantively address the Parties' remaining arguments. Either Party may raise those arguments on remand if appropriate to do so.

## IV. CONCLUSION

For the reasons stated above, the Court **REVERSES** the Commissioner's decision denying Bobbi benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4). Final judgment shall issue accordingly.

**SO ORDERED**.

Date: 9/28/2026

Kellie M. Barr
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email